{¶ 1} Relator, Allen K. Pruett, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation and to order the commission to find that relator is entitled to said compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. After reviewing the stipulated evidence, the magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in denying relator's application for PTD compensation and recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator's objections to the contrary, this court finds that the magistrate properly discerned the pertinent legal issues and applied the relevant law to those issues. Having completed an independent review of the file, this court finds no error in the magistrate's decision. Accordingly, this court hereby overrules relator's objections and adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein. As such, relator's request for a writ of mandamus is denied.
Objections overruled; writ denied.
BROWN and LAZARUS, JJ., concur.
 APPENDIX A DECISION IN MANDAMUS {¶ 4} Relator, Allen K. Pruett, has filed this original requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and to order the commission to find that relator is entitled to that compensation.
 {¶ 5} Findings of Fact:
 {¶ 6} 1. Relator sustained a work-related injury on February 9, 1984, and his claim has been allowed for: "Fracture left leg, fracture right wrist, fracture right collar bone *** degenerated right hip secondary to right hip fracture[.]"
 {¶ 7} 2. On February 10, 1984, relator underwent an open reduction, and total fixation of the comminuted tibial fracture and medial malleolar fracture, left tibia.
 {¶ 8} 3. Relator returned to work on June 25, 1984.
 {¶ 9} 4. On October 5, 1994, relator underwent total right hip replacement surgery. On October 22, 1994, it was ascertained that relator had dislocated his right hip and a closed reduction of the right hip was attempted. This procedure was unsuccessful and relator later underwent an open reduction of the right hip.
 {¶ 10} 5. Relator received temporary total disability compensation following these surgeries.
 {¶ 11} 6. On March 2, 1995, relator was examined by Dr. Edwin H. Season, who opined that relator had reached maximum medical improvement. Dr. Season also indicated that relator was incapable of returning to his previous employment but that he would be capable of performing sedentary and light duty work. Dr. Season further opined, that it was his opinion that, at his advanced age, relator would not be a good candidate for rehabilitation.
 {¶ 12} 7. Relator submitted an application for PTD compensation on June 16, 1995. At the time, he was 59 years old, had a ninth grade education, and indicated that he could read but was not able to write or do basic math well. Relator's prior work history consists of working as a laborer in plumbing and wiring from 1950 to 1974, as a custodian from 1971 to 1974, and as a laborer whose duties included sweeping streets, filing pot holes, laying blacktop, shoveling snow, painting curbs, and mowing grass from 1976 to 1989.
 {¶ 13} 8. Relator submitted the June 13, 1995 report of his attending physician, Dr. Vincent K. Chu, who stated as follows: "At this point, I think he has reached maximum medical improvement, together with his advanced age, I do not think he can go back to work. I think he is permanent and totally disabled."
 {¶ 14} 9. A vocational evaluation was performed by James S. Albrink, M.S., CRC, CCM, and dated December 13, 1995. Mr. Albrink concluded that, given his age, and educational work experience, relator was not capable of performing sustained remunerative employment.
 {¶ 15} 10. Relator's application was heard before a staff hearing officer ("SHO") on January 24, 1996, and resulted in an order denying his application for PTD compensation. The SHO relied upon the report of Dr. Season for the conclusion that relator could perform work activity in the sedentary as well as light duty categories. The SHO also concluded that, based upon the report of Dr. Season, relator's right total hip replacement had been successful. The SHO conducted his own analysis of the nonmedical disability factors. The SHO noted that relator was 53 years of age when he last worked in 1999, that he was currently 59 years old, and that relator had indicated he had not attempted to enter into rehabilitation or to otherwise retrain for employment within unskilled sedentary and light duty physical ranges. The SHO noted that relator had a ninth grade education but that there was no evidence indicating that relator suffered from any particular intellectual deficiency. The SHO concluded that relator's ninth grade education was an overall positive vocational asset indicating that he would at least be capable of performing unskilled types of sedentary and light duty work especially considering his prior long and successful work history at a variety of unskilled types of sustained remunerative employment. The SHO concluded that relator had not met his burden of establishing that he was entitled to PTD compensation and indicated that relator could perform work at jobs including hand packer, unskilled inspector, security guard and security system monitor.
 {¶ 16} 11. Thereafter, relator filed the instant mandamus action in this court.
 {¶ 17} Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 20} Relator challenges the commission's reliance upon the report of Dr. Season for two reasons: (1) Dr. Season indicated that relator's total right hip replacement was successful when the record indicates that relator continued to have significant pain in that area; and (2) pursuant to State ex rel. Zamora v. Indus. Comm. (1989),45 Ohio St.3d 17, the commission abused its discretion by relying on one part of Dr. Season's report (that relator was capable of performing sedentary and light duty work) while rejecting another portion of the same report (that relator was not a good candidate for rehabilitation). Relator also contends that the commission gave improper reasons for rejecting the vocational report of Mr. Albrink and there is no evidence in the record to indicate that the jobs listed by the commission that relator is capable of performing were actually sedentary and light duty jobs. For the reasons that follow, this magistrate finds that relator's arguments are not well-taken.
 {¶ 21} In his March 2, 1995 report, Dr. Season noted that relator complains of persistent right hip discomfort but concluded that, although his functional capacity and ambulatory capacity has been restricted, relator demonstrated a normal gait and did not require ambulatory aids. Dr. Season concluded that relator's right total hip replacement had been successful.
 {¶ 22} Relator contends that the conclusion that the right hip replacement had been successful is negated by the evidence relator presented indicating that he continues to have pain in his hip. This magistrate disagrees with relator's conclusion.
 {¶ 23} As stated previously, Dr. Season noted that relator continues to have pain in his right hip; however, Dr. Season also noted that relator walked with a normal gait and did not need ambulatory aids. In its order, the commission noted that relator would be expected to have the restrictions that one would normally expect an individual to have who had undergone a successful right total hip replacement. Nowhere in Dr. Season's report nor in the commission's order has it been said that relator has no problems with his right hip. In fact, relator has some very limiting restrictions with regard to his physical abilities directly related to his right hip. However, that does not mean that Dr. Season's interpretation of his hip replacement as "successful" constitutes an error or a reason for the commission not to rely on that report.
 {¶ 24} Relator also contends that the commission abused its discretion by accepting Dr. Season's physical restrictions and conclusion that relator could perform sedentary and light duty work while rejecting Dr. Season's conclusion that, at his age, relator was not a good candidate for rehabilitation based upon Zamora, supra. In Zamora, the court concluded that it would be inconsistent to permit the commission to reject a doctor's report at one level, for whatever reason, and then to rely on that same report at another level. As the court reiterated in State ex rel. Tilley v. Indus. Comm. (1997), 78 Ohio St.3d 524, Zamora is properly invoked when the commission tries to revive evidence that was previously deemed unpersuasive. Zamora does not apply in this situation. Furthermore, Dr. Season's opinion as to whether relator would be a good candidate for rehabilitation is immaterial. Doctors give opinions as to impairment while the commission is the exclusive evaluator of disability. As such, Dr. Season's gratuitous comment that relator was not a good candidate for rehabilitation is not binding upon the commission regardless of the commission's reliance on the remainder of the doctor's report.
 {¶ 25} Relator also contends that the commission improperly rejected the vocational report of Mr. Albrink. The commission had noted that Mr. Albrink relied upon the work restrictions and physical restrictions set forth by relator's attending physician, Dr. Chu, and that Mr. Albrink did not mention the medical report of Dr. Season. A review of Mr. Albrink's report indicates that he did have Dr. Season's report in front of him and that he noted that Dr. Season indicated that relator could perform sedentary to light duty work and that he was not a good candidate for rehabilitation.
 {¶ 26} The commission has the discretion to accept one vocational report while rejecting another vocational report or to reject all vocational reports that are in the record. See State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. Further, the commission is not required to give an explanation for why vocational evidence is being rejected. To bind the commission to a rehabilitation report's conclusions would make the rehabilitation evaluator, and not the commission, the ultimate evaluator of disability contrary to Stephenson, supra. See State ex rel. Singleton v. Indus. Comm. (1994), 71 Ohio St.3d 117.
 {¶ 27} Lastly, relator contends that the commission's analysis of nonmedical factors is deficient because there is no evidence in the record to indicate that the jobs listed by the commission are in fact unskilled entry level sedentary and light duty jobs. On the one hand, the commission is not required to list specific jobs which relator could perform. On the other hand, it is presumed that the commission has knowledge of the strength requirements involved in certain jobs. Relator contends that a security guard would have to be able to make an arrest, and so, that job is obviously neither sedentary nor light duty. However, relator's argument assumes that all positions for a security guard require one to make arrests. Such is not the case. Further, relator does not challenge the other positions listed by the SHO. Relator's argument is not well-taken.
 {¶ 28} The commission found that relator's age did not preclude him from working, and that he had refused any rehabilitation or training. Further, the commission noted that relator's educational level was sufficient to perform entry level sedentary and light duty work and that his prior work history demonstrated an ability to perform a variety of unskilled types of sustained remunerative employment. The commission's analysis satisfies the requirements of Noll, supra.
 {¶ 29} Based upon the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, and that this court should deny relator's request for a writ of mandamus.